(92 Misc. Rep. 589)

### In re SHERMAN.

(Supreme Court, Special Term, Wyoming County. December, 1915.)

1. ELECTIONS ⚖️154—PRIMARY ELECTIONS—ACTION OF ELECTION OFFICERS— REVIEW BY COURT.

In summary proceedings under Election Law (Laws 1911, c. 891) § 56, providing that the action of any custodian of primary records in canvassing and certifying the result may be reviewed by summary proceedings, and the court may make any change in the result of such election as certified to by the custodian, the Supreme Court will interfere only when it is shown that the action of the custodian in canvassing and certifying the result is fraudulent, erroneous, or in violation of some duty

imposed by law, and will not interfere to correct mistakes made by the electors themselves.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ☞154.]

2. ELECTIONS ☞154—PRIMARY ELECTIONS—ACTS OF ELECTION OFFICERS—SUMMARY PROCEEDINGS.

Where the votes cast at a primary election were counted as cast, 17 for "E. D. Sherman," 2 for "D. Sherman," 1 for "Dee Sherman," and 18 for Sherman's opponent, there was no action or neglect of any public official, authorizing the Supreme Court to interfere in summary proceedings, under Election Law (Laws 1911, c. 891) § 56, against the inspectors of the election and custodians of the primary records, to require the custodians to cancel the certificate of election issued to Sherman's opponent and issue such certificate to Sherman.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ☞154.]

Summary proceedings by Erastus D. Sherman to review the action of inspectors of election and custodians of primary records of the county of Wyoming. Application denied.

Elmer E. Charles, of Warsaw, for petitioner.

Knight, Knight & Bentley, of Arcade (John Knight, of Arcade, of counsel), for John A. Lewis.

TAYLOR, J. The primary election for the Second election district of the town of Arcade, Wyoming county, was held on the 28th day of September, 1915. The respondent, John A. Lewis, had been duly designated as a candidate for Democratic county committeeman for the district, and his name was printed on the official primary ballot. Immediately below his name was a blank space. The whole number of votes cast was 38, of which 17 were counted and canvassed for "E. D. Sherman," 2 for "D. Sherman," 1 for "Dee Sherman," and 18 for John A. Lewis. The votes for Sherman were cast by writing in the name in the blank space on the ballot. The inspectors of primary election canvassed and returned the vote as above stated, and the custodians of primary records thereafter issued a certificate of election to Lewis. This is a summary proceeding, brought by the petitioner, Erastus D. Sherman, under the Election Law (Laws of 1911, c. 891), to review the action of the inspectors of election and the custodians of primary records to require the custodians of primary records to cancel the certificate of election issued to the respondent Lewis, and to issue such certificate to the petitioner. The inspectors and custodians have all been brought in as parties to the proceeding.

The provisions of the Election Law which apply to the proceeding are sections 39 and 56. Section 39 is as follows:

"The election of members to any party committee may be reviewed by summary proceedings before the Supreme Court or a justice thereof, as provided for in section 70 (56) of this act, upon the petition of any person qualified to vote at the primary election of the party which such committee represents."

Section 56 reads, in part, as follows:

"Any action or neglect of the officers or members of a political convention or committee, or of any inspector of primary election, or of any public officer or

board with regard to the right of any person to participate in a primary election, convention or committee, or to enroll with any party, or with regard to any right given to or duty prescribed for, any voter, political committee, political convention, officer or board, by this article, shall be reviewable by summary proceedings upon the petition of any person aggrieved thereby, or upon a petition presented by the chairman of any political committee, which summary proceedings may be instituted before the Supreme Court or a justice thereof within the judicial district where the transaction, act or neglect of duty took place. * * *

"In reviewing such action or neglect, the court, justice or judge shall consider, but need not be controlled by, any action or determination of the regularly constituted party authorities upon the questions arising in reference thereto, and shall make such decision and order as, under all the facts and circumstances of the case, justice may require. * * *

"The action of any custodian of primary records in canvassing and certifying the result of any primary election, or of the secretary of state in preparing and certifying the list of delegates to any convention, or members of a state committee, may be reviewed in like manner by the Supreme Court, or a justice thereof, which by order may make any change in the result of such primary election as certified to by the custodian of primary records, or any change or alteration in the list of delegates or members of a state committee prepared by the secretary of state, as justice may require. * * *

"The court, or a justice thereof, upon such proceeding, shall have the right to subpœna and examine witnesses, or in its discretion to hear and determine the case upon affidavits.

"In case the court or a justice thereof should find and determine that both parties to the controversy had been guilty of frauds or that the primary has been so permeated by fraud as to render it impossible for him to determine the true result of such primary and who was elected thereat, such court or justice shall have the right to direct the holding of a new primary at the same place and in the same manner as the regular official primary."

In Matter of Zimmer, 76 Misc. Rep. 320, 134 N. Y. Supp. 502, and 77 Misc. Rep. 336, 136 N. Y. Supp. 506, it appeared that at the primary election there involved 83 votes were cast for county committeeman. Chas. Papworth, who was the regular nominee for the party position, had his name printed on the ballot. The votes for the petitioner, Zimmer, were written in. Thirty-five ballots were cast for Papworth, 33 for Charles N. Zimmer, and 13 for Charles Zimmer, C. Zimmer, C. N. Zimmer and other forms of the same surname. The first proceeding was brought against the board of primary election inspectors to review their action in failing to canvass and count the above-named miscellaneous votes for the petitioner, and to restrain the custodians of primary records from issuing a certificate to Papworth on the strength of the return of the election inspectors. Judge Pound said (76 Misc. Rep. 321, 134 N. Y. Supp. 502):

"While some question is raised as to the meaning of the later ballots, it appears that enough of them were intended for Charles N. Zimmer to elect him, if they may be counted according to the intent of the voters. *It was not the duty of the inspectors of the primary election so to determine the intent of the voters.* Their duties were ministerial. They made a correct return of the votes as cast and there their functions ended. * * * It is obvious that the court has no power to alter the return of the inspectors of the primary election. Their return is in accord with the votes cast. * * * No relief can be awarded the petitioner as against them as their return is neither fraudulent nor erroneous"—citing Matter of Hines, 141 App. Div. 569, 573, 126 N. Y. Supp. 386.

[1] If this is a correct statement of the law with reference to the duty and powers of the election inspectors, it would seem to follow that the custodians of primary records have no power to determine the intent of the voters. In Matters of Hines, 141 App. Div. 574, 126 N. Y. Supp. 390, the court describes the custodians of primary records as a ministerial board "whose functions are accurately summed up in the title of custodian." Although this decision bears on a former statute, it is still correct in principle in so far as quoted.

It is not shown that the custodians of primary records have acted fraudulently nor that they have failed or neglected to perform any duty imposed upon them by law. They canvassed and certified to the vote precisely according to the return of the election inspectors. The statute (Election Law [Laws of 1911, c. 891] § 56) says that the action of any custodian of primary records in canvassing and certifying the result of a primary election may be reviewed by summary proceedings, and the court may make any change in the result of such primary election as certified to by the custodian of primary records.

. As I read the statute, the Supreme Court should not interfere in such a proceeding as this until it is shown that the "action" of the custodian "in canvassing and certifying the result" is fraudulent, erroneous, or in violation of some duty or responsibility imposed by law. Matter of Hines, supra. The whole trend of the statute is to confer the power of summary proceedings upon the court in case of erroneous, unlawful, or fraudulent action on the part of the officials therein specified, but does not give any power to correct mistakes made by the electors themselves. Matter of Jackson v. Britt, 147 App. Div. 87, 131 N. Y. Supp. 877; Matter of King, 155 App. Div. 720, 140 N. Y. Supp. 914. The latter case expressly holds that section 56 of the Election Law (Laws of 1911, c. 891) applies only to the official acts of the board and to matters of which it had jurisdiction, and had been decided since the present section 56 became operative.

[2] Assuming, as we may, that the affidavits submitted on this hearing abundantly show that 2 votes cast at the primary election for D. Sherman, and 1 vote for "Dee" Sherman, were intended for the petitioner, and that if they were so counted they would change the result, I fail to see wherein the "action or neglect" of any public official has contributed in the slightest degree to this state of affairs. It is true that the Supreme Court took a different view of the scope of this statute when the Zimmer Case came before it for the second time (see 77 Misc. Rep. 336, 136 N. Y. Supp. 506), but the reasoning of the court was expressly disapproved by the Appellate Division, Fourth Department, in the Matter of Tenjost, 169 App. Div. 300, 154 N. Y. Supp. 708, and to follow the court below in the Zimmer Case would only invite reversal by our Appellate Division.

In Matter of Sweeney, 158 App. Div. 496, 143 N. Y. Supp. 727, it appeared that the respondent, Henry V. Borst, was commonly known as Henry V. Borst and as H. V. Borst. The tally sheets showed that Henry V. Borst received one vote, H. V. Borst three votes, and Harry V. Borst two votes, and William Siebe received three votes, Wm. Siebe one vote and W. Siebe one vote. The question presented

was whether the two votes cast for Harry V. Borst should have been counted for Henry V. Borst. The respondent's affidavits failed to show that he was known anywhere in the the district as Harry V. Borst, while it did affirmatively appear that he had a son named Harry V. Borst living in the district. The Appellate Division, in reversing the decision of the lower court (see Matter of Sweeney, 158 App. Div. 496, 143 N. Y. Supp. 727), held that the legal presumption was that the two ballots cast for Harry V. Borst were intended for the son of Henry V. Borst, and not for Henry V. Borst himself, and that the secretary of state had, therefore, improperly certified that Henry V. Borst was duly nominated. In the lower court the reasoning proceeded upon the theory that the court might, under section 56 of the Election Law, determine in a summary proceeding the intent of the voter. The appellate court, on the other hand, proceeded upon the theory that there had been an erroneous action of the election board, in that it had certified that Henry V. Borst had received two votes which had actually been cast for Harry V. Borst, a resident of the district, and that this error brought the case within the purview of section 56 of the Election Law.

The proper proceeding, it seems to me, would be for the petitioner to try out his title to the office in question by an appropriate action; and the statute provides for an examination of the ballots cast, if that be desired, as a preliminary to such action.

Application denied, without costs.